## Assigned Estate of P. A. Ahl & Brother.   Appeal of W. A. Coffey.

*Assignment for creditors—Partnership—Removal of assignee.*

Where an assignment for creditors of the partnership and individual property has been made by a partnership and its members, and subsequently another person is substituted in the place of the original assignees, and the estates are so mingled and interwoven that it would be scarcely possible to treat them separately, such substituted assignee may be removed by the court from the administration of all of the estates upon the petition of an individual creditor of one of the partners praying for his removal as to such partner.   As his appointment was a unit, his removal should be the same.

*Assignment for creditors—Misconduct of assignee—Removal.*

An assignee for creditors will be removed where it appears that he was guilty of waste and mismanagement; that he paid claims which were not legitimate; that he incurred the entirely unnecessary expenditure of a very considerable amount of money for the removal of a costly monument to another locality; that he paid debts which had been contracted by the assignors after the date of the assignment; that he paid very considerable sums for repairs to the real estate as to some of which it was alleged there were no actual repairs made, and as to others that the amounts paid were excessive and unreasonable.

Argued April 25, 1899.   Appeal, No. 366, Jan. T., 1898, by W. A. Coffey, from order of C. P. Cumberland Co., dismissing assignee.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.   Affirmed.

Petition for removal of assignee.

The facts appear by the opinion of BIDDLE, P. J., which was as follows:

After a careful examination of the evidence in this case, it is clear to us that the prayer of the petitioner should be granted, and W. A. Coffey be removed from further connection with the assigned estates. As a justification for his expenditures in the estate of P. A. Ahl, which have been excepted to, he sets up that Q. P. Ahl, the petitioner, is not a creditor of that estate, but is merely a creditor of the estate of D. V. Ahl, and there-fore has no standing to impeach the administration of the P. A. Ahl trust. With this position we cannot agree. The estates and indebtedness of P. A. Ahl, D. V. Ahl and P. A. Ahl & Brother, have been so intimately connected for many years that it would now be impossible to consider them as if they were entirely separate and distinct. The present assignee has testified before the auditor that he himself has treated the whole property as if it were the estate of P. A. Ahl & Brother, and has paid the taxes indiscriminately, and has likewise thus paid discounts in bank; money for expenses to P. A. Ahl; for expenses and services to S. D. Mowery; for removal of monument and work in connection therewith to the Empire Granite Company; for clothing bill to George W. North; etc. In regard to taxes the assignee admitted, too, that he paid them not only on the lands that remained in the assigned estates, but also on those which have been sold and conveyed by prior assignees to S. D. Mowery, and on those which had been acquired by D. V. Ahl since the assignment. He made no distinction, at the times of payment, between the different estates, and took general receipts from the collectors for the sums paid, and when the accounts were being prepared (in response to a citation) he "tried to make a division of them between the two estates."

J. M. Weakley, Esq., auditor appointed to distribute the balance in the hands of J. H. Houck and Asbury Derland, assignees of P. A. Ahl, D. V. Ahl, and P. A. Ahl & Brother, under their first and partial accounts, added the sum of $9,981.86 to the amount for distribution to firm creditors, the same being the balance in the hands of said Houck & Derland as assignees of D. V. Ahl individually, and awarded it to partnership claims. To this action exceptions were filed by the assignors, which were dismissed by the auditor in an opinion in which he says: " The intention of the auditor in transferring the balance in the accountants' hands in the Daniel V. Ahl estate to their account

in the estate of P. A. Ahl & Brother was to provide a fund out of which the debts of the partnership might be paid out of the funds of the individual partner. The exception is not sustained." The auditor's report on this subject was affirmed by the court in November, 1894, and the balance which appeared in the individual estate of D. V. Ahl was accordingly applied to the payment of joint obligations. The estate of P. A. Ahl must, of course, be charged with such sums as are shown to have been applied to its obligations out of the assets of D. V. Ahl. There is held by the Farmers Bank a note drawn by W. A. Coffey, assignee of P. A. Ahl & Brother, to the order of W. F. Sadler, for $1,990, which the cashier says is a consolidation of at least twelve notes given by P. A. Ahl & Brother to various parties since the assignment. The said bank likewise holds a note drawn by W. F. Sadler to W. A. Coffey, assignee for P. A. Ahl & Brother, for $800. Mr. Coffey thinks that prior to the death of P. A. Ahl, on March 20, 1897, these two notes were carried along with P. A. Ahl, executor, as drawer, and W. F. Sadler as indorser. There is no pretense that they were obligations of the assigned estates, yet after P. A. Ahl's death, Mr. Coffey put his name to them as assignee, and has paid a large amount of money to the bank as discounts upon them. He testified that P. A. Ahl said, "all he wanted out of the estate was a good living, that led me to make these payments in part." "When I made payments for Peter for alleged repairs, sometimes I knew they were needed and sometimes I did not know."

It appears that the title to certain rent yielding property in Newville had been conveyed by prior assignees to S. D. Mowery for a consideration of $9,000, in payment of which said Mowery gave to the assignees judgments and mortgages for the full amount of the purchase money; whereupon, $3,500 of these obligations were sold and transferred to outside investors, and the money applied to estate debts, and $1,500 of them were assigned to the Farmers Bank, as collateral for a note of the P. A. Ahl & Brother estate. Notwithstanding this condition of affairs, the assignee has carried along the note in bank and has continued to pay discounts on it, but has failed to collect either principal or interest on the collateral; and he has paid the taxes and repairs on the Newville property, whilst others received the

income therefrom. There is no justification for this course; nor is there for the payment of taxes and expenses connected with the property which D. V. Ahl acquired after his assignment; nor for the payment of over $1,700 for the removal and alteration of a monument; nor for the payment out of D. V. Ahl's estate of over $1,000 for a livery bill; nor for the payment of the various judgments and other claims for which the accountant takes credit, which were contracted by the assignors since the assignment; nor for the payment of discounts on the notes of $1,990 and $800 in the Farmers Bank, etc. The number of mispayments is legion, and the only partially redeeming feature in the whole affair, so far as Mr. Coffey is concerned, is that the misapplied moneys did not go to his own benefit; yet he seemed to totally ignore his fiduciary obligations to estate creditors, and the result has been a continuous misappropriation of trust funds. Many disbursements in both estates were mispayments, for the assignee had no right to assume that the estate of P. A. Ahl was solvent, so long as a number of its admitted debts were unpaid and the claim of the present petitioner against it unadjusted. If the assignee considered the estate of P. A. Ahl to be solvent, his proper plan would have been to have paid the undisputed claims against it and given security for the payments of all demands which were in dispute, and thereupon been discharged by the court as provided by the act of May 4, 1864. Having failed to do this, the said estate must be treated as an insolvent one until all of its lawful debts have been liquidated, and then (if any assets remain) the propriety or impropriety of the other payments which appear in the account will be a matter for adjustment only between the assignee and the personal representative of P. A. Ahl, who is now deceased.

We must also comment unfavorably upon the accounts which the respondent has filed, and we take for illustration the one in the assigned estate of D. V. Ahl. It is typewritten and contains seven pages of debits and fourteen pages of credits, yet not a column has been footed up by the accountant and we look in vain for totals showing the balance in his hands. He has simply placed the numerous items of his account in unadded columns upon twenty-one pages of paper and has not seen fit to state what is the balance in his hands. Does he keep books?

If so, does the balance shown thereby correspond with what will appear from the account when it is correctly added up? Have items been omitted, or mistakes occurred in their transmission to paper by the typewriter? There is a strong probability that the accountant cannot answer the last two questions. This method of stating an account is very reprehensible, for it does not furnish such an exhibit as the law contemplates, and it directly tends to produce inaccuracy in accounts and could well be used to conceal an unfaithful statement of 'an account; for if errors or discrepancies were discovered by the creditors, the excuse would be plausible that certain sums had been accidentally omitted or incorrect figures used and the mistakes not noticed.

In response to a reference in the argument to certain disbursements by the first assignees, we will say that we see no analogy whatever between the management by the said assignees of the large, valuable and widely scattered property which came into their hands, and the management by Mr. Coffey of the unsold remnant of it which was intrusted to him in January, 1895; nor would the inference be warranted that said assignees ever paid one dollar to the assignors or any one else, for services or otherwise, except directly in accordance with law. Further, as to the point that the court cannot pass on the present controversy while the auditor is taking testimony in relation to the exceptions filed to the account, we think said point is without merit.

In conformity with the foregoing views we enter the following decree:

And now, October 24, 1898, the court being satisfied by evidence of the truth of the matters charged, and that W. A. Coffey had mismanaged and wasted the assigned estates of P. A. Ahl, D. V. Ahl and P. A. Ahl & Brother, and that said estates have thereby been jeopardized and would be further jeopardized by his continuance as assignee, it is ordered and decreed as follows:

That said W. A. Coffey file final accounts in said estates within fifteen days, and he is hereby removed and discharged from his position as assignee aforesaid, and after filing said accounts he is ordered to pay over, upon demand, to such successor as the court shall appoint, all goods, money, estate or effects whatsoever, in his hands as said assignee.

*Error assigned* was the decree of the court.

*A. G. Miller* and *W. F. Sadler*, for appellant.—The court had no jurisdiction to remove the assignee from all the trusts: Mc-Cabe's App., 22 Pa. 427; Powel & Co.'s Assigned Est., 163 Pa. 349.

An assignee has large discretionary powers, and is only liable for want of ordinary prudence: Schofield's Est., 167 Pa. 481.

*J. W. Wetzel*, of *Wetzel & Hambleton*, with him *C. W. Webbert*, for appellee.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

This proceeding was a petition for the removal of an assignee for the benefit of creditors. The original deed of assignment executed in 1885 was made by D. V. Ahl, P. A. Ahl and P. A. Ahl & Brother, and included the property of the partnership and the individual property of the members. Two assignees were appointed by the deed and they accepted and executed the trust until 1890, when they settled their accounts and were discharged on their own petition, and two other persons were appointed in their place. These persons continued in office until 1895, when W. A. Coffey was appointed in their place. The great bulk of the large and scattered assigned estates had been administered by the prior assignees when Coffey was appointed. There were still however a good many pieces of real estate and some personal property left to be administered by Coffey, and in 1897, he filed his first account. All the estates were managed together by each set of assignees and were so treated that it became impracticable to separate them. A large number of exceptions were presented to the account filed by Coffey as assignee in 1897, an auditor was appointed and, in July, 1898, while testimony was being taken before the auditor, a petition was presented to the court of common pleas by Q. P. Ahl, as administrator of John A. Ahl, deceased, who was a creditor to a large amount of D. V. Ahl, one of the assignors, and a member of the firm of P. A. Ahl & Brother, praying for the removal of Coffey as assignee for causes mentioned in the petition. D. V. Ahl had died in 1893, which was prior to Coffey's appointment as assignee, but the settlement of the assigned

estates proceeded as before. P. A. Ahl died in 1897, but the settlement of the assigned estates was not yet completed. Coffey still continued to act as assignee of all the estates, and was so doing when the petition for his removal was presented. The learned court below, after hearing the case upon the petition, answer and testimony, made a decree removing the assignee from his position in all the estates, and from that decree the present appeal was taken. One of the matters strongly urged in the argument was that, as the petitioner was only the representative of a person, John A. Ahl, who was a creditor of D. V. Ahl only, and not of the firm, nor of P. A. Ahl, and as the petitioner only asked for the removal of Coffey as assignee of D. V. Ahl, the court had no jurisdiction which would authorize the discharge of Coffey as assignee of the firm of P. A. Ahl. The question is peculiar, and one of very rare occurrence, but we incline to the opinion that the exception to the jurisdiction is not well taken. The appointment of Coffey was as assignee for all the estates, and he acted as such in all his proceedings. It is difficult to see how he could be removed as assignee of D. V. Ahl without becoming thereby incapacitated from acting as assignee of the other estates. The act of his appointment was a unit, he was appointed for one and for all by the same decree. If he could execute one appointment he was obliged to execute all. And this was so, not only because he was appointed for all, but because the estates of the individual members of the firm and of the firm, as such, were so mingled and interwoven together that it would be scarcely possible to treat them separately. If Coffey were still to act as assignee for P. A. Ahl & Brother, and P. A. Ahl, because he cannot be removed from those positions, in consequence of such removal not being asked for in the petition, then he would remain clothed with all the power and rights of such assignee, and would be entitled to continue to act as such in dealing with the estates. But D. V. Ahl was a member of the firm of P. A. Ahl & Brother, and his estate was liable to be appropriated, if necessary to the payment of the debts of that firm, and for that reason it must be accessible for whatever purposes it may be required in the settlement of the joint estate. Moreover, the partnership creditors must work out their remedies through the equities of the partners, and this involves the settlement of

the partnership accounts as between the partners. In such a situation we think the action of the court in removing Coffey as assignee of D. V. Ahl embraces by necessity the right to remove him entirely from all. His appointment was a unit, we think his removal should be the same.

With regard to the causes of removal, they are fully expressed in the opinion of the court below, and we think they are amply justified by the testimony. They involve charges of waste and mismanagement, the payment of claims which were not legitimate, the incurring and paying of excessive charges for numerous services, the receipt and disbursement of large sums, without a single dollar remaining for creditors, the entirely unnecessary expenditure of a very considerable amount of money for the removal of a costly monument to another locality, the payment of debts which had been contracted by the assignors after the date of the assignment, the payment of very considerable sums for repairs to the real estate as to some of which it is alleged there were no actual repairs made, and as to others that the amounts paid were excessive and unreasonable. All these and other matters were found by the court as facts, and were quite sufficient to justify the decree of removal. The assignments of error are all dismissed.

Decree affirmed and appeal dismissed at the cost of the appellant.